UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| PROFESSIONAL SPORT SERVICE FI OY,<br><br>Plaintiff,<br>v.<br><br>JAY GROSSMAN and JMG SPORTS AGENCY, INC.,<br><br>Defendant. | Civil Action<br><br>Case No. |

**VERIFIED COMPLAINT**

**INTRODUCTION**

1. Through this action, Plaintiff Professional Sport Service FI OY ("PSS") seeks to ensure that Defendants Jay Grossman ("Mr. Grossman") and JMG Sports Agency, Inc. ("JMG-MA") finally pay PSS arbitration awards from 2018 and 2024. To avoid paying the over $1 million awarded to PSS, Mr. Grossman has played a shell game. To blockade PSS's ability to collect, he has: (i) created, merged, and re-named various entities, (ii) sold off substantial personal assets, and (iii) flatly ignored federal court judgments and asset discovery. In other words, Mr. Grossman has deceptively weaponized the corporate form to defraud PSS of the monies to which it is entitled. This is exactly the situation in which courts pierce the corporate veil – to prevent avoidance of a debt through fraud.

2. The saga that led to this lawsuit began in 2012, when Mr. Grossman's entity, Puck Agency, LLC ("Puck"), contracted with PSS, which is located in Finland and manages Finnish professional ice-hockey players, to develop and represent ice-hockey players in the National Hockey League ("NHL"). PSS and Puck were to share equally in commissions on the salaries

received by these NHL players. But government records state that Puck "MERGED OUT OF EXISTENCE" long before 2012, such that according to those documents Mr. Grossman caused PSS to contract with a fictive entity.

3. Puck failed to pay under the terms of the parties' agreement. Mr. Grossman's plan now appears clear; by causing PSS to contract with the non-existent Puck he was always confident in his ability to breach the agreement without consequence.

4. Thereafter, PSS succeeded in an arbitration in Finland, pursuant to the terms of the parties' agreement. But Puck did not satisfy the judgment and Mr. Grossman had shifted his business activities to another legal entity (that he also deceptively called Puck) without ever informing PSS.

5. Mr. Grossman shifted assets to ensure that PSS could not obtain the monies awarded in the arbitration. When PSS domesticated the first arbitration award and sought to levy the bank account which Mr. Grossman had previously used to make some payments to PSS, it learned the account had been closed. Confirming Mr. Grossman's plan to shift assets away from PSS's reach, after PSS domesticated the Finnish arbitration award in New York Mr. Grossman sold off his home in New York, which served as the headquarters and address for service of process for Puck, for $1.3 million.

6. In a further attempt to collect, PSS filed a second arbitration against Puck and the new entity. This time, Mr. Grossman did not even bother to appear. PSS thus won the second arbitration. About two months after PSS noticed the second arbitration, Mr. Grossman formed a third entity, this one located in Massachusetts, JMG-MA, again without informing PSS. Though PSS domesticated the second arbitration award in New York, Mr. Grossman has refused to respond to asset discovery to satisfy that judgment.

7. At last, PSS has recognized that it must seek relief against Mr. Grossman and JMG-MA. Though Mr. Grossman has, to date, succeeded in evading collection of the two arbitration awards through manipulation of his entities and the creation of alter egos, he cannot run away from himself.

## PARTIES

2. Plaintiff, Professional Sport Service Fi Oy, at all relevant times herein, is a corporation duly organized and existing under the laws of Finland, with its principal place of business located at Pinsiöntie 910, 39150 Pinsiö, Finland. (Hereinafter referred to as "PSS").

3. Defendant Jay Grossman ("Mr. Grossman") resides at 36 Hammet Lane, Chilmark, Massachusetts 02535. Mr. Grossman was, at all relevant times, the sole member of Puck Agency, LLC, a Delaware Limited Liability Company, duly organized and existing under the laws of Delaware, with its principal place of business located at One Sunset Drive North, Chappaqua, New York 10514 ("Puck").

4. Mr. Grossman was at all relevant times the sole owner and officer of JMG Sports Agency, Inc, a New York corporation, with its principal place of business located at One Sunset Drive North, Chappaqua, New York 10514 ("JMG-NY").

5. Mr. Grossman was also, at all relevant times, the sole owner and officer of Defendant JMG Sports Agency Inc., a Massachusetts corporation with its principal place of business located at 36 Hammet Lane, Chilmark, Massachusetts 02535. ("JMG-MA").

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction pursuant to Title 28 of the United States Code Section 1332 where Plaintiff PSS is a Finnish corporation, Defendant JMG-MA is a Massachusetts corporation, and Mr. Grossman, the sole owner and officer of JMG-MA, is a resident of Massachusetts.

7.      Venue is properly laid in the United States District Court for the District of Massachusetts Eastern Division pursuant to Title 28 of the United States Code Section 1391 because Mr. Grossman is domiciled within this district.

## FACTS

### I. Mr. Grossman Contracts with PSS to Represent NHL Ice-Hockey Players

8.      Mr. Grossman is a registered agent under the rules and regulations of the National Hockey League Players Association ("NHLPA"). Initially, Mr. Grossman operated as a registered agent and the sole owner of Puck, which was formed as a Delaware LLC in 2001.

9.      Mr. Grossman continues to hold himself out as operating through Puck on the NHLPA website. The description on the NHLPA website as of September 5, 2024, states, "Jay Grossman, JMG Sports Agency d/b/a Puck Agency, LLC".

10.     Mr. Grossman *was* Puck. No other individual made any material decisions on behalf of the LLC.

11.     Through an agreement dated July 30, 2012, PSS and Puck agreed to share in the revenue derived from the representation of Finnish professional ice-hockey players playing in the United States (the "Agreement"). See Exhibit A.

12.     However, before the Agreement was entered into, and unbeknownst to PSS, according to the records of New York Department of State, Division of Corporations Mr. Grossman had actually allowed Puck to be "merged out of existence" *five years prior* in 2007. See Exhibit B. In other words, Mr. Grossman from the start deceived PSS about the entity with which it was contracting, thus enabling him to breach the agreement and leave PSS to seek relief against an entity which no longer existed.

4

## II.     Mr. Grossman Breaches the Agreement

13. In 2018, after Mr. Grossman failed to remit payment to PSS, a dispute arose and the parties engaged in an arbitration in Finland bearing case number Finnish Arbitration Institute ("FAI") 23/2018 ("First Arbitration Proceeding").

14. In the First Arbitration Proceeding, PSS alleged that Puck had breached the terms of the Agreement and owed PSS outstanding monies. Puck contested those claims and alleged that it did not owe PSS any outstanding payments, but rather PSS owed Puck money, including, but not limited to, the initiation of the First Arbitration Proceeding.

15. On November 22, 2018, the arbitrator found in favor of PSS and ruled that Puck had breached the terms of the Agreement, awarding PSS $76,616 and $171,919.60 in post-expiration commissions plus interest, as well as costs associated with the filing of the First Arbitration Proceeding (the "First Arbitration Award"). The First Arbitration Award is attached here as Exhibit C.

16. To collect on the First Arbitration Award, PSS filed a petition on June 24, 2019 in the Southern District of New York ("SDNY"), bearing docket number 19-cv-05904, to confirm the First Arbitration Award against Puck.

17. In a Decision and Order dated November 8, 2019, the Honorable United States District Court Judge Cathy Seibel of the SDNY granted in part, and denied in part, confirmation of PSS's First Arbitration Award. See Exhibit D.

18. Subsequently, the SDNY entered Judgment against Puck for the sum of $323,327.58 as of May 31, 2019, with applicable post-judgment interest continuing to accrue ("First US Judgment"). See Exhibit E.

### III. Mr. Grossman Continues to Evade Collection Efforts, Including by Closing the Sole Bank Account About which PSS Had Knowledge

19. On January 9, 2020, a Writ of Execution on the First US Judgment was issued in favor of PSS. However, levy and execution on the First US Judgment was unsuccessful because it appeared that Grossman engaged in intentional transfers of assets and rights from Puck to JMG-NY to evade the First US Judgment.

20. Specifically, PSS attempted to levy Puck's bank account at Bank of America, where, until before the First US Judgment, Puck had maintained its banking relationship.

21. It was at this time that PSS learned Puck had terminated its banking relationship with Bank of America, leaving the First US Judgment entirely unsatisfied. See Exhibit F. As Bank of America wrote in response to the writ of execution: "We completed our research and Bank of America, N.A. hereby files its answer to the above-mentioned matter as follow: ACCOUNT CLOSED. No further search will be made." Id.

22. In other words, Mr. Grossman depleted the assets of the sole bank account of which PSS had knowledge, in order to frustrate collection of the judgment.

23. Around the time of PSS's unsuccessful attempt to levy on the First US Judgment, PSS first became aware that Mr. Grossman had previously created and then utilized JMG-NY to avoid the First US Judgment. Notably, the registered name of JMG-NY is JMG Sports Agency, Inc. d/b/a Puck Agency. See Exhibit G. Mr. Grossman's intentionally confusing description of the entities he completely controls has enabled him to continue to shield assets and thwart PSS's ability to levy on the judgments it has obtained.

24. By including a fictitious name designation, Mr. Grossman was able to continue to (falsely) represent to hockey players that the commissions owed by those players to Puck could be

6

submitted seamlessly to a different legal entity.

25. Upon information and belief, in or about June 2020, Mr. Grossman instructed Sami Niku, a Finnish hockey player governed by the Agreement, to forward payments to a newly created Bank of America account payable to JMG-NY *instead of* Puck.

26. In yet another tactic to evade payment, and noticeably after the First US Judgment was entered, Mr. Grossman sold his Chappaqua, NY home, which had served as the headquarters and address for service of process against JMG-NY, in January of 2021 for $1.3 million. See Exhibit H. Also at this point, he began using his home in Chilmark, Massachusetts as the address for JMG-NY, even going so far as to obtain a COVID-19 Pandemic PPP loan at this address for $24,598 (see Exhibit I) after previously receiving one at his New York home address for $26,204 (see Exhibit J).[1]

### IV. When PSS Seeks to Enforce Its Rights for a Second Time, Mr. Grossman Again Uses His Entities to Evade Collection

27. Since Mr. Grossman prevented PSS from collecting on and enforcing the First US Judgment and continued to breach his executory obligations under the Agreement, PSS initiated a another proceeding in Finland in 2022 against JMG-NY, bearing case number FAI 15/23 ("Second Arbitration Proceeding"), seeking to hold it jointly and severally liable with Puck.

28. Unlike the First Arbitration Proceeding where Puck, through Mr. Grossman, contested the proceeding, no one appeared on behalf of either Puck or JMG-NY.

---

[1] Notably, and presumably to "double dip" into PPP loans, Mr. Grossman used the name "JMG Sports Agency Inc" for the MA address, while previously using "JMG Sports Inc" for the NY address.

7

29. Upon information and belief, neither Puck nor JMG-NY defended the Second Arbitration Proceeding because Mr. Grossman had caused both Puck and JMG-NY to be judgment proof.

30. Just months after PSS submitted the Notice of Arbitration on February 28, 2022, and (again) unbeknownst to PSS, Mr. Grossman formed JMG-MA with the very same corporate name as JMG-NY. This confirmed that Mr. Grossman intended to operate his business through an alter ego that was not yet subject to arbitration in a transparent effort to avoid his and his entities' liability to PSS.

31. Indeed, Mr. Grossman formed JMG-MA on May 3, 2022, not even three months after the Second Arbitration Proceeding was initiated. A true and correct copy of that entity's Article of Organization is attached here as Exhibit K. As the Articles of Organization reflect, Mr. Grossman occupies every executive position for JMG-MA, including as President, Treasurer, Secretary, and Director. Id. The address of JMG-MA is Mr. Grossman's residential address at 36 Hammett Lane in Chilmark, MA. Id.

32. Mr. Grossman's intent in forming JMG-MA was clear: he sought to create an alter ego that would allow him to continue his business while evading collection of PSS's judgments against his other entities.

33. On January 4, 2024, the arbitrator for the Second Arbitration Proceeding entered an award against JMG-NY jointly and severally with Puck. This was a combination of the unpaid First US Judgment as well as continuing executory obligations under the Agreement, totaling $896,268.49, with applicable interest continuing to accrue ("Second Arbitration Award"). A true and correct copy of the Second Arbitration Award is attached here as Exhibit L.

34. On March 19, 2024, PSS initiated proceedings in the SDNY to confirm the Second Arbitration Award against JMG-NY jointly and severally with Puck.

35. Like with the Second Arbitration Proceeding, neither Puck nor JMG-NY defended the 2024 proceedings in the SDNY to confirm the Second Arbitration Award.

36. On June 7, 2024, the Honorable Kenneth M. Karas of the SDNY confirmed the Second Arbitration Award against JMG-NY jointly and severally with Puck in the amount of $887,187.55, with further and applicable pre- and post-judgment interest ("Second US Judgment"). A true and correct copy of the Second US Judgment is attached here as Exhibit M.

V. **Mr. Grossman Refuses to Respond to Asset Discovery, Which Would Reveal the Financial Relationship Among His Entities**

37. In light of Mr. Grossman's attempts to evade any collection of the amounts he and his entities owed to PSS, Plaintiff propounded written discovery requests pursuant to the Federal Rules of Civil Procedure Rules Nos. 34 and 69 on both Puck and JMG-NY ("Judgment Debtors"), whereby Plaintiff requested documents *inter alia* relating to any legal or financial relationship between Puck, JMG-NY, and JMG-MA. See Exhibit N. PSS did so in an effort to trace the financial relationship between the Judgment Debtors and the newly formed JMG-MA, and to discover whether and how Mr. Grossman had once again transferred rights and assets to evade judgments.

38. Those documents were due by August 1, 2024, and, unsurprisingly, neither Judgment Debtor responded.

39. To date, PSS has received two US Judgments holding JMG-NY and Puck jointly and severally liable to PSS in the total amount of $887,187.55, with further and applicable post-judgment interest. Neither Puck nor JMG-NY have responded to the Second Arbitration Proceeding in Finland or the proceeding to confirm the Second Arbitration Proceeding in the

9

SDNY. They have further failed to respond to document demands propounded on the Judgment Debtors to ascertain the financial relationship between the Judgment Debtors and JMG-MA.

40. Upon information and belief, the *only* person who has complete control of the actions (and inactions) of these entities is the sole owner of them, Mr. Grossman. Indeed, from PSS's perspective Mr. Grossman did functionally everything on behalf of the entities and there was no functional distinction between dealing with Mr. Grossman and dealing with the entities which he called Puck.

41. In addition, and not contemplated in these two US Judgments, is the significant legal fees PSS has incurred in its so-far futile attempts at collection, which never would have been necessary but for Mr. Grossman's fraudulent conduct.

42. Further, and notwithstanding Puck's insolvency and two US Judgments against his companies, Mr. Grossman brazenly continues to advertise his connection with Puck in publications, including, but not limited to, postings on the Martha's Vineyard Commission website, where he is listed as the President of Puck. See Exhibit O (last accessed on Sept. 11, 2024) at 2.

43. Despite two US Judgments entered by the SDNY, Grossman, in his role as President and founder of Puck, JMG-NY, and now JMG-MA, is seeking once again to evade judgments, while intentionally and openly committing fraud in circumvention of the same. Accordingly, PSS has initiated this action personally against Mr. Grossman to put an end to his impermissible tactics.

44. Mr. Grossman is, and at all times has been, the sole decision-maker at Puck, JMG-NY, and JMG-MA.

## COUNT ONE
## DECLARATORY JUDGMENT

45. PSS incorporates by reference and repeats the allegations contained in paragraphs 1 through 41of this Complaint.

46. The transfer by Mr. Grossman of the assets from Puck to JMG-NY for nominal to no consideration was an abuse of the corporate identity of Puck and resulted in inequitable consequences in violation of the Commonwealth of Massachusetts. The transfer was between entities of common ownership, subject to the pervasive control of Mr. Grossman, demonstrative of a mingling of assets and management during a period of insolvency of Puck, accomplishing a siphoning away of corporate assets by the dominant shareholder, Mr. Grossman, in promotion of fraud and inequity by Mr. Grossman against Plaintiff.

47. The transfer by Mr. Grossman of the assets of Puck to JMG-NY for no to nominal consideration was an intended confused intermingling of business assets, nonobservance of corporate formalities and a use by Mr. Grossman for the sole purpose of promoting fraud.

48. The suspected transfer by Mr. Grossman of the assets from JMG-NY to JMG-MA for nominal to no consideration was an abuse of the corporate identity of JMG-NY and resulted in inequitable consequences in violation of the Commonwealth of Massachusetts. The transfer was between entities of common ownership, subject to the pervasive control of Mr. Grossman, demonstrative of a mingling of assets and management during a period of insolvency of JMG-NY, accomplishing a siphoning away of corporate assets by the dominant shareholder Grossman in promotion of fraud and inequity by Mr. Grossman against Plaintiff.

49. The suspected transfer by Mr. Grossman of the assets of JMG-NY to JMG-MA for no to nominal consideration was an intended confused intermingling of business assets, nonobservance of corporate formalities and a use by Mr. Grossman for the sole purpose of promoting fraud.

50. PSS seeks a declaratory judgment that it is equitable to pierce the corporate and Limited Liability Company veils, such that Mr. Grossman and JMG-MA are each liable for the

full amount of the US Judgements, together with post-judgment interest, costs of suit and reasonable attorney fees.

## COUNT II

### TRANSFERS IN FRAUD OF CREDITORS (G.L.C. 109A) AGAINST DEFENDANT JAY GROSSMAN INDIVIDUALLY AND AS PRESIDENT OF PUCK, JMG-NY, AND JMG-MA AS WELL AS AGAINST JMG-MA

51. Plaintiff incorporates by reference and repeats the allegations contained in paragraphs 1 through 47 of this Complaint.

52. Chapter 109A of the General Laws of the Commonwealth of Massachusetts prohibits transfers in fraud of creditors.

53. The transfer of property and/or assets from Puck by Mr. Grossman for no or nominal considerations to JMG-NY was fraudulent as to PSS.

54. The transfer of property and/or assets from Puck by Mr. Grossman for no or nominal considerations to JMG-NY was made with the actual intent of Mr. Grossman to hinder, delay, and defraud PSS.

55. As a result of the fraudulent transfer of the assets of Puck to JMG-NY, Puck was unable to satisfy its obligations to PSS and satisfy the First US Judgment that PSS obtained against Puck.

56. The suspected transfer of property and/or assets from JMG-NY by Mr. Grossman for no or nominal considerations to JMG MA was fraudulent as to PSS.

57. The suspected transfer of property and/or assets from JMG-NY by Mr. Grossman for no or nominal considerations to JMG MA was made with the actual intent of Mr. Grossman to hinder, delay, and defraud PSS.

58.     As a result of the fraudulent transfer of the assets of JMG-NY to JMG-MA, JMG-NY was unable to satisfy its obligations to PSS and satisfy both the First and Second US Judgments that Plaintiff obtained against JMG-NY jointly and severally and liable with Puck.

59.     PSS seeks to recover all assets and monies which have been transferred to Mr. Grossman or JMG-MA following the notice of the initial arbitration in order to satisfy the full amounts of the judgments against Mr. Grossman and against JMG-NY, and all other relief which this Court finds equitable including, without limitation, preliminary and permanent injunction preventing Mr. Grossman and JMG-MA from transferring or disposing of assets other than in the ordinary course of business.

## COUNT III

### FRAUD AGAINST DEFENDANT JAY GROSSMAN INDIVIDUALLY AND AS PRESIDENT OF PUCK, JMG-NY, AND JMG-MA

60.     PSS incorporates by reference and repeats the allegations contained in paragraphs 1 through 56 of this Complaint.

61.     That Mr. Grossman made personal misrepresentations to PSS that Puck was solvent and could pay its obligations to Plaintiff as enumerated in the Agreement when they became due.

62.     Those misrepresentations were made with the intention to induce PSS to enter into the Agreement with Puck.

63.     That Mr. Grossman made the misrepresentations of the financial conditions of Puck so that Plaintiff would enter into the Agreement with Puck.

64.     That as a result of the misrepresentations of Mr. Grossman, PSS has been damaged.

65.     That Mr. Grossman made personal misrepresentations to PSS that the assets of Puck were not being transferred to JMG-NY, so that PSS would not be able to collect on the

monies owed to it as a result of the First US Judgment.

66. That Mr. Grossman did not alert PSS that the assets of JMG NY were transferred to JMG MA, so that PSS would not be able to collect on the monies owed to it as a result of both the First and Second US Judgments.

67. As a result of those misrepresentations by Mr. Grossman, PSS has been damaged.

**WHEREFORE,** Professional Sport Service Fi Oy demands the following prayers for relief:

1. For a declaration that Jay Grossman individually and JMG Sports Agency, Inc. (a Massachusetts corporation) are liable for the liabilities of Puck Agency, LLC and JMG Sports Agency, Inc. (a New York corporation);

2. For damages, pre and post judgment interest, cost of suit and for attorney fees;

3. For the issuance of a temporary, preliminary and permanent restraining order preventing Jay Grossman and JMG Sports Agency, Inc. (a Massachusetts corporation) from transferring or disposing of any of their respective assets outside of the ordinary course of business;

4. For such other relief as the Court deems equitable and just.

Respectfully submitted,

PROFESSIONAL SPORT SERVICE FI OY

By their attorneys,

*/s/ Benjamin J. Wish* _____
Benjamin J. Wish (BBO No. 672743)
*bwish@toddweld.com*
Grace C. Bayman (BBO No. 707045)
*gbayman@toddweld.com*
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626

        Fax: (617) 227-5777

        Joseph J. DePalma (NJ Bar No. 002151982)
        *Pro Hac Vice Admittance Pending*
        *jdepalma@litedepalma.com*
        **LITE DEPALMA GREENBERG AND AFANDOR, LLC**
        570 Broad St, Suite 1201
        Newark, NJ 07102
        Tel: (973) 623-3000
        Fax: (973) 623-0858

Dated: September 12, 2024

## VERIFICATION

I, Jarmo Kork, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that I am the principal of Plaintiff Professional Sport Service Fi Oy, that I am familiar with the matters as set forth in the Verified Complaint; and that those averments are true and correct to the best of my knowledge and belief.

Dated: 09/12/2024

_____
Jarmo Kork