UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| PROFESSIONAL SPORT SERVICE FI OY, <br><br> Plaintiff, <br><br> v. <br><br> JAY GROSSMAN and JMG SPORTS AGENCY, INC., <br><br> Defendant. | Civil Action <br><br> Case No. 1:24-cv-12351 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN EXPEDITED DISCOVERY SCHEDULE AND TRIAL DATE AND TO REVISE THE COURT'S OCTOBER 15, 2024 PRELIMINARY INJUNCTION ORDER**

### i. Introduction

Plaintiff Professional Sport Service Fi Oy ("PSS") moves pursuant to Fed. R. Civ. P. 26(b)(1) for an expedited discovery schedule and trial date to prevent Jay Grossman ("Mr. Grossman") from succeeding indefinitely in his plan, upon which he has been executing for years, to evade making payments indisputably owed to PSS. If this matter is not expedited, PSS may become completely unable to collect on any judgment at all against Mr. Grossman or his alter ego JMG Sports Agency, Inc. ("JMG-MA") (collectively "Defendants") given Mr. Grossman claims that he has been diagnosed with terminal cancer.

Mr. Grossman has a long history of "systematically misus[ing] the corporate form to thwart collection of judgments awarded to [PSS]," which the Court already recognized in allowing PSS's Motion for a Preliminary Injunction, on October 15, 2024. See Docket Paper 19, Memorandum and Order, at 4. In opposing PSS's Motion for Preliminary Injection, Mr. Grossman represented that he is suffering from Stage IV lung cancer, which has spread to his

brain, and that he is currently undergoing extensive chemo and radiation therapy. See Docket Paper 15, Declaration of Jay Grossman, at 10 (stating, "I need access to my personal assets to provide for my cancer treatment and care").

Because Mr. Grossman has already employed multiple transparent tactics to delay discovery and the resolution of this case, PSS is deeply concerned that Mr. Grossman will continue his practice of misusing the corporate form to forever evade his obligation to pay the significant sums (now totaling over $1.2 million and counting) owed to PSS. As just one example, in an attempt to delay the inception of discovery, Mr. Grossman has moved to dismiss the operative complaint on the very same bases that he sought (and failed) to oppose PSS's motion for preliminary injunction. For these reasons, and as detailed further below, an expedited discovery schedule and trial date is not only entirely reasonable under these circumstances, but it is necessary, and PSS has more than sufficient "good cause" for seeking such relief from the Court.

In the alternative, PSS requests a Rule 16 conference at the Court's earliest convenience to establish an efficient discovery schedule. By way of example only, there is no good reason at all for delaying any further the deposition of Mr. Grossman or PSS's ability to collect documents reflecting Defendants' past and current bank account(s) and bank records showing Mr. Grossman's past fraudulent conveyances. This critical discovery must go forward immediately notwithstanding Defendants' pending Motion to Dismiss (which is essentially a "copy and paste" of the arguments this Court rejected in allowing PSS's Motion for Preliminary Injunction).

Finally, PSS respectfully moves to revise the Court's October 15, 2024 Preliminary Injunction Order. See Docket Paper 19-1. Currently, Defendants are precluded from "transferring, dissipating, liquidating, or otherwise disposing of any personal or business assets

without leave of the Court." Id., 1.  However, the Court has permitted JGM-MA to conduct business in the ordinary course of business and continue to receive funds.  See id.  PSS respectfully requests that Court supplement and revise its Preliminary Injunction Order to prevent Defendants from using any new bank account(s) for the receipt of incoming funds, which they are not already using, in order to safeguard against further fraudulent conduct by Defendants. Indeed, PSS cannot effectively audit Defendants' movement of funds, as the Court's Preliminary Injunction Order requires, unless PSS understands the full universe of banks accounts where Defendants' assets sit and through which Defendants continue to receive incoming funds.

### ii. Factual Background

In 2012, PSS, a Finnish sports talent agency, contracted with Puck Agency LLC ("Puck"), a now-defunct business entity of which Grossman was the sole member and shareholder, to recruit and place Finnish hockey players in professional teams in the United States.  See First Amended Complaint ("Am. Compl."), at ¶¶ 2, 3, 11.  Under this agreement, the parties agreed to share in the revenue derived from the representation of Finnish professional ice-hockey players playing in the United States. Id., ¶ 11.  After Puck failed to make multiple payments due under the agreement, PSS succeeded in obtaining an arbitration award against Puck for $248,535.00, plus costs. Id., ¶¶ 12, 14.  PSS then domesticated the arbitration award and obtained a judgment against Puck for $323,327.00 in the United States District Court for the Southern District of New York ("SDNY"). Id., at ¶ 17.

After being unable to collect the judgment from Puck, PSS learned that Puck was no longer in business and that Grossman had incorporated JMG Sports Agency, Inc. ("JMG-NY") in the state of New York, not only to conduct the same business but in fact legally doing business

3

as Puck. Id., ¶¶ 18, 21, 22, 23. Grossman concealed this fact from PSS. Id., at ¶ 22. As it turns out, Grossman had transferred assets from Puck to JMG-NY and Puck had been defunct for years, a fact Grossman also concealed. Id., ¶¶ 18, 19, 21. PSS then proceeded to a second arbitration, naming Puck and JMG-NY as parties (because those were the only entities of which it was aware) in 2022. Id., ¶ 26. Neither Puck nor JMG-NY appeared at this arbitration, and neither provided any reason for their absence. Id., ¶ 27. In 2024, PSS was able to successfully domesticate the second arbitration and obtain a United States judgment in SDNY for a total of $896,268.00. Id., ¶ 32. Neither Puck nor JMG-NY appeared to protest the award. Id., ¶ 34.

Incredibly, at the very time that the second arbitration was proceeding, Grossman continued to abuse the corporate form by creating yet another entity with the **same name** in Massachusetts, JMG-MA. Id., ¶¶ 30, 31, 36. He did so three months **after** judgment entered against JMG-NY, and, under information and belief, transferred and/or directed future monies belonging to JMG-NY to be sent to JAM-MA. Id. Notably, PSS sought asset discovery relating to any legal or financial relationship between JMG-NY and JMG-MA pursuant to Federal Rules of Civil Procedure Nos. 34 and 69 in SDNY. Id., ¶ 36. Predictably, however, neither JMG-NY nor Puck ever responded, despite their status as judgment debtors. Id., ¶ 37. Defendants now concede that Grossman was the only member of Puck and is the only stockholder of both JMG-NY and JMG-MA.[1]

### iii. Relevant Procedural History

On September 12, 2024, PSS filed its Complaint against Grossman and JMG-MA alleging the fraudulent transfer of assets under M.G.L. c. 109A, common law fraud (which has

---

[1] See Transcript from PSS's Motion for Preliminary Injunction on October 7, 2024 ("PI Hearing Transcript") (attached hereto as **Exhibit A**), at 21:12-17.

now been dismissed without prejudice), violations of M.G.L. c. 93A, and seeking a declaratory judgment to pierce JMG-MA's corporate veil.  See Docket Paper 1, the Complaint.

Due to Grossman's systemic use of fraud to evade collection, PSS simultaneously filed a preliminary injunction against both Defendants which sought to enjoin the dissipation of their assets.  See Docket Paper 2, PSS's Motion for Preliminary Injunction.  Based upon the pleadings, affidavits, and arguments of counsel at a hearing, the Court **granted** PSS's Motion for Preliminary Injunction.  See Docket Paper 19.  On October 15, 2024, the Court issued a blistering Memorandum of Order, holding that PSS had demonstrated a substantial likelihood of success on the merits based upon the following:

1. **Grossman has used the corporate form to evade Plaintiff's attempt to collect on two arbitration awards** [that have been successfully domesticated in US courts].  (Emphasis added).

2. Grossman was the sole member of Puck and JMG-NY, the two entities against which judgment was entered.

3. After Puck contracted with Plaintiff in 2012, Grossman incorporated two successor entities and transferred Puck's assets **without informing Plaintiff**.  (Emphasis added).

4. Plaintiff was only made aware of JMG-NY's existence after obtaining the first arbitration award.

5. At all times **up to the present**, Defendant [Grossman] has described his business to the public as 'Puck Agency.' Grossman has had **complete and full control of each of the entities** under which he has conducted his sports agency business.  (Emphasis added)

6. **There is evidence sufficient to satisfy this Court that Grossman has systemically misused the corporate form to thwart collection of the judgments awarded to Plaintiff**.  (Emphasis added).

See id., 4-5 (emphases supplied).

Subsequently, and clearly to delay this matter, Defendants indicated that they would be filing a Motion to Dismiss.  In the spirit of being cooperative, PSS assented to a Motion to

5

Extend Time for Defendants to do so but cautioned that it would seek attorneys' fees associated with having to defend against the same arguments which the Court had already rejected in determining that PSS had a substantial likelihood of success in this case. Unfortunately, and yet predictably, Defendants moved to dismiss "for failure to state a claim," asking the Court to dismiss PSS's claims based upon virtually the same arguments Defendants previously made in opposition to PSS's Motion for Preliminary Injunction including, among other things, that PSS should have itself investigated and discovered that Mr. Grossman was clandestinely using multiple entities such that the applicable statute of limitations has run. See generally Docket Paper 26.

To accommodate what PSS believed were ongoing negotiations, PSS agreed to extend the deadline for Defendants to file their appellate brief not once but twice. Unfortunately, it has now become apparent that Defendants' Motion to Dismiss, appealing the Court's Preliminary Injunction Order, and claimed efforts to resolve this matter are all transparent stall tactics.[2]

### iv. Argument

Simply put, a party is entitled to expedited discovery if there is "good cause" for the expedited discovery. See Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd., 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). In assessing good cause, a court will examine the reasonableness of the request in light of all the circumstances. See Laughlin v. Orthofix Int'l, N.V., 293 F.R.D. 40, 41 (D. Mass. 2013).[3] In applying the reasonableness

---

[2] PSS refrained from filing this Motion sooner because it was hoping to reach a resolution with Defendants.

[3] There are theoretically two tests a court might apply to determine reasonableness, and the First Circuit Court of Appeals has not yet determined which is appropriate. However, the United States District Court for the District of Massachusetts, has acknowledged that the majority of courts inside and outside of the First Circuit have applied the reasonableness standard. See

standard, courts have analyzed various factors, including for example "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." Momenta Pharmas., Inc. v. Teva Pharmas Indust. Ltd., 765 F.Supp.2d 87, 89 (2011) (citing McMann v. Doe, 460 F.Supp.2d 259, 265 (D.Mass.2006)).  Courts weigh these factors, and as a result, no one factor is dispositive.  See McMann, 460 F. Supp. 2d at 265.  Here, these factors weigh in favor of the Court ordering an expedited discovery schedule and trial date, and, therefore, PSS's Motion is reasonable and should be allowed.

**I.      Expediting This Matter Is Not Only Reasonable, But It Is Necessary To Prevent Irreparable Harm.**

It is no secret that an irreparable injury is demonstrated where there is a "strong indication that the defendant may dissipate or conceal assets." Micro Signal Rsch., Inc. v. Otus, 417 F.3d 28, 31–32 (1st Cir. 2005) (citing Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 881 (9th Cir.2003) and Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir.1996)).  For example, in Micro Signal Rsch., Inc. v. Otus, the defendant's transfer of business from one entity to another coupled with "prevarications about repayment" of the at-issue debt was more than sufficient to demonstrate irreparable injury.  See 417 F.3d at 31-32.  Further, the Supreme Judicial Court of Massachusetts has found that irreparable harm is demonstrated where the funds in dispute may disappear prior to a determination on the merits.  See Boston Athletic Association v. International Marathons, Inc., 392 Mass. 356, 362 (1984); see also Boston Athletic Ass'n v. International Marathons, Inc., 392 Mass. 356, 362, 467 N.E.2d 58 (1984) (no abuse of discretion

---

Laughlin, 293 F.R.D. at 41.  PSS has, therefore, relied on that standard in this Motion. Regardless, expedited discovery is proper under either test, for essentially the same reasons.

7

in finding irreparable harm where denial of injunction might result in disposal of funds prior to determination on merits).

Here, the Court has already determined with respect to PSS's Motion for Preliminary Injunction that "[PSS] has demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction, including, without limitation, the likely inability to collect on any judgment against the entities under which Grossman has operated his sports agency." Docket Paper 19, at 5. For obvious reasons, the added elements of Mr. Grossman representing to the Court that he is suffering from terminal Stage IV lung cancer, and that he requires "access to [his] personal assets to provide for [his] cancer treatment" (see Docket Paper 15, at 11), increases the likelihood that PSS may never being able to collect any recovery at all unless this matter is expedited.

Moreover, Mr. Grossman's conduct lays bare the extreme measures he will take to evade his payment obligations to PSS. See Docket Paper 19, at 4 ("There is evidence sufficient to satisfy this Court that Grossman has systemically misused the corporate form to thwart collection of the judgments awarded to Plaintiff"). Mr. Grossman has on numerous occasions shifted assets between entities or sold off assets (he even sold his home in New York) to deprive PSS of any viable means of recovery. See id., 2. Mr. Grossman, now suffering from Stage IV lung cancer, has also sought to delay this litigation, including by seeking extensions to file a Motion to Dismiss based upon arguments which the Court already rejected, and PSS is deeply concerned that any further delay could prevent PSS from obtaining any recovery or litigating its claims.

Of course, the proverbial "elephant in the room" is that in the unfortunate circumstance that Mr. Grossman succumbs to his disease without PSS having had the opportunity to obtain discovery from him and to depose him, would make it ever more difficult to obtain a judgment

8

against his estate. Although PSS hopes that is not the case, Mr. Grossman has indicated that his condition is terminal and that he "has months to live," which leaves PSS with a limited window of time to take Mr. Grossman's deposition and obtain critical discovery regarding Mr. Grossman's and his entities' financial and bank records. He has also indicated that he must undergo extensive treatment. Absent an expedited discovery schedule and trial date, there is a substantial likelihood that PSS may never recover for any of its judgments against Mr. Grossman and the entities under which he operated his sports agency. See Micro Signal Rsch., Inc., 417 F.2d at 31. For these reasons, the Court should allow PSS's Motion.

## II.     PSS Has Already Demonstrated A Likelihood Of Success On The Merits.

This factor, too, weighs in favor of allowing PSS's Motion, as the Court has already held that PSS has a substantial likelihood of success on the merits. See Docket Paper 19, 5. In allowing PSS's Motion for Preliminary Injunction, the Court found there is a substantial likelihood that PSS will be able to demonstrate that as the "sole member of Puck and [] the sole stockholder of JMG-NY," Mr. Grossman "has had complete and full control of each of the entities under which he has conducted his sports agency business." See id., 3. As referenced above, the Court also held that Grossman has misused the corporate form to avoid paying PSS. See id., 4. Moreover, PSS has also already obtained **two** arbitration awards concerning the amounts Mr. Grossman and his entities owe PSS, which were both domesticated in the SDNY. See id. Therefore, it is undeniable that PSS has demonstrated a substantial likelihood of success on the merits (and that Defendants have no legitimate liability defense to PSS's case), and so discovery should proceed, or else PSS may never collect the amounts owed to it.

## III.    The Balancing Of Hardships Favors Expediting Discovery And The Trial Date.

To be clear, PSS understands Mr. Grossman is battling a Stage IV lung cancer and that an expedited schedule of this matter poses a burden on him. As unfortunate as Mr. Grossman's

9

prognosis is, however, it is undeniable that PSS only brought this matter in the first place out of necessity because of Mr. Grossman's continued failure to pay amounts clearly owed under the parties' contract and his fraudulent use of the corporate form to evade paying PSS over the course of many years. Undoubtedly, Mr. Grossman could avoid being burdened at all if he would simply pay PSS the amounts owed (and for the multiple judgments already rendered against him). To this end, in balancing the competing hardships under these circumstances, the courts give little weight to "injuries that parties bring upon themselves through blatant misconduct." See Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 806 (3d Cir. 1998). Mr. Grossman's anticipated complaint in opposition to this Motion that he will be greatly burdened if this matter is expedited due to his illness and need to obtain treatment is foreclosed by the fact that this Motion (and PSS's lawsuit is general) is solely a product of Mr. Grossman's continuing failure to satisfy the prior judgments against him. The very root of any burden expedited discovery imposes on Mr. Grossman is his long track record of fraudulently conveying assets to evade his payment obligations to PSS. See Am. Compl. at ¶¶ 15, 18, 33, 36.

Furthermore, it bears noting that Defendants have not sought a stay on discovery pending the outcome of his Motion to Dismiss, and the mere filing of a motion to dismiss does not automatically entitle them to a stay of discovery. See Wilcox Indus. Corp. v. Hansen, 279 F.R.D. 64, 72 (D.N.H. 2012). Defendants should not be permitted to move to dismiss on bases which the Court has already rejected (as a means for further delaying the litigation), while at the same time claiming Mr. Grossman "only has a few months to live," while also simultaneously opposing PSS's request to expedite this matter. Ultimately, the balancing of hardships clearly favors expediting the discovery schedule and trial date, and the Court should allow PSS's Motion.

As a final point, there is no "degree of prematurity" whatsoever with respect to PSS's request to expedite discovery. See Momenta Pharmas, Inc., 765 F.Supp.2d at 89. In fact, PSS's Motion is not premature at all. As Mr. Grossman points out in the very first sentence of his Memorandum of Law in Support of his Motion to Dismiss, the parties have been litigating these claims for "over six (6) years," and so none of the claims brought by PSS in this case should be a surprise to Defendants. See Docket Paper 26, at 1 (emphasis supplied). So too, PSS filed its Verified Complaint and Motion for Preliminary Injunction on September 12, 2024, approximately five months before serving this Motion, and Defendants have had ample opportunity to investigate PSS's claims (not to mention Mr. Grossman's having the opportunity to do so during the three prior lawsuits). Based on the foregoing, it is both reasonable and necessary for discovery to proceed expeditiously in this case and for the Court to order a trial date in the near future, so that PSS ultimately has a chance at actually recovering anything from Defendants.

**IV.     The Court Should Revise Its Preliminary Injunction Order To Prevent Defendants' Use Of Additional Banks Account(s) For Incoming Funds.**

As referenced above, the Court's Preliminary Injunction Order precludes Defendants from "transferring, dissipating, liquidating, or otherwise disposing of any personal or business assets with leave of the Court." See Docket Paper 19-1, Preliminary Injunction Order, at 1. The Court has also permitted JGM-MA to conduct business in the ordinary course of business and presumably continue to receive incoming funds. See id. Although Defendants are precluded from dissipating funds, PSS respectfully requests that Court supplement and revise its Preliminary Injunction Order to also prevent Defendants from using any new bank account(s) for incoming funds, which they are not already using, so that PSS can effectively track Defendants' movement of assets. The Court's Preliminary Injunction Order requires periodic, reasonable

11

audits. See id. This revision will ensure Defendants' accounts can be accurately identified and thus effectively audited so that no asset transfers are missed. Simply put, PSS cannot periodically audit Defendants' movement of funds if it does not understand the full universe of accounts to be audited, where Defendants' assets currently sit.

### iv. Conclusion

For the foregoing reasons, PSS requests the following relief:

a. Order initial disclosures to be served fourteen (14) days from the allowance of this Motion;

b. Allow discovery to commence immediately, prior to the Court's ruling on Defendants' pending Motion to Dismiss;

c. Order that discovery is to be completed by May 1, 2025;

d. Limit the parties to taking two depositions per side, which are to be completed by May 1, 2024;

e. Set a trial date for early summer 2025;

f. In the alternative, set a Rule 16 conference within the next seven (7) days.

g. Revise the Court's October 15, 2024 Preliminary Injunction Order to prevent Defendants from using any new bank account(s) for incoming funds, which they are not already using; and

h. Any other relief which the Court deems equitable and just.

Respectfully submitted,

PROFESSIONAL SPORT SERVICE FI OY

By their attorneys,

*/s/ Benjamin J. Wish* _____
Benjamin J. Wish (BBO No. 672743)
*bwish@toddweld.com*
Grace C. Bayman (BBO No. 707045)
*gbayman@toddweld.com*
Gregory R. Browne (BBO No. 708988)
gbrowne@*toddweld*.com
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
Joseph J. DePalma (NJ Bar No. 002151982)
*Pro Hac Vice Admittance Pending*
*jdepalma@litedepalma.com*
**LITE DEPALMA GREENBERG AND AFANDOR, LLC**
570 Broad St, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858

Dated: March 6, 2024

## CERTIFICATE OF SERVICE

I, Benjamin J. Wish, hereby certify that this document has been filed through the ECF system and will be served together with the Verified Complaint and Summons.

*/s/ Benjamin J. Wish* _____
Benjamin J. Wish

13