## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| PROFESSIONAL SPORT SERVICE FI OY,<br><br>                    Plaintiff,<br>v.<br><br>JAY GROSSMAN, JMG SPORTS AGENCY, INC.<br><br>                    Defendant,<br><br>And<br><br>BANK OF AMERICA,<br><br>                    Trustee Process Defendant | Civil Action No.<br>1:24-cv-12351-NMG |

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CONTEMPT AGAINST DEFENDANTS JAY GROSSMAN AND JMG SPORTS AGENCY, INC., AND NON-PARTY NANCY D. GRUNDMAN</u>**

## **Table of Contents**

Table of Authorities..................................................................................................... ii

i.    Introduction....................................................................................................1

ii.   Factual and Procedural Background

    I.    Factual Background ...............................................................................3

    II.   Procedural Background..........................................................................4

iii.  Argument

    I.    Defendants' Violation of the PI Order is a Civil Contempt of this Court..........9

    II.   The Court Should Impose Sanctions in the Form of Judgment and
        Reimbursement of Attorneys' Costs and Fees ..................................13

    III.  The Court Should Also Appoint a Receivership, or in the Alternative,
        Order Future Commissions to be Held in Trust ................................15

    IV.   The Court Should Also Find Mrs. Grundman in Civil Contempt and
        Order the Return of all Monies Fraudulently Transferred to Her ...................18

iv.   Conclusion ...................................................................................................20

## Table of Authorities

### Cases

*Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir. 1995) ..................................................................................10

*AngioDynamics, Inc. v. Biolitec AG*,
  946 F. Supp. 2d 205 (D. Mass. 2013), *aff'd and remanded in part*,
  780 F.3d 420 (1st Cir. 2015) .......................................................................9, 10, 14

*Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*,
  683 F.2d 25 (1st Cir. 1982) .................................................................................16

*Companion Health Servs., Inc. v. Kurtz*,
  675 F.3d 75 (1st Cir. 2012) .............................................................................14, 15

*Crispin-Taveras v. Mun. of Carolina*,
  647 F.3d 1 (1st Cir. 2011)......................................................................................15

*Dystar Corp. v. Canto*,
  1 F. Supp. 2d 48 (D. Mass. 1997) ....................................................................10, 18

*Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*,
  692 F.2d 790 (1st Cir. 1982) .................................................................................10

*G. & C. Merriam Co. v. Webster Dictionary Co.*,
  639 F.2d 29 (1st Cir. 1980) ..................................................................................18

*Goya Foods, Inc. v. Wallack Mgmt. Co.*,
  290 F.3d 63 (1st Cir. 2002) ..................................................................................13

*Hawkins v. Dep't of Health & Hum. Servs.*,
  665 F.3d 25 (1st Cir. 2012) .............................................................................10, 14

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949).............................................................................................9-10

*Project B.A.S.I.C. v. Kemp*,
  947 F.2d 11 (1st Cir. 1991)...............................................................................10, 18

*Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*,
  626 F. Supp. 3d 478 (D. Mass. 2022) ...............................................................14, 15

*Star Fin. Servs., Inc. v. AASTAR Mortgage Corp.*,
  89 F.3d 5 (1st Cir. 1996) ......................................................................................10

*United States v. United Mine Workers*,
  330 U.S. 258 (1947)......................................................................................................14

*Vallejo v. Santini-Padilla*,
  607 F.3d 1 (1st Cir. 2010) ...........................................................................................14

*Wells Fargo Bank, N.A. v. Walnut Equity Partners, LLC*,
  No. 10-10287, 2010 WL 1065004 (D. Mass. 2010) ...................................................16

## **Rules & Statutes**

Fed. R. Civ. P. 65(d)..............................................................................................................18, 19

G.L. c. 109A, § 8(a)(3)(i)-(iii) ...............................................................................................15

G.L. c. 109, § 9 ..........................................................................................................................19

### i. Introduction

Professional Sport Service Fi Oy ("PSS" or "Plaintiff") respectfully moves for an order finding Defendants Jay Grossman ("Mr. Grossman") and/or JMG Sports Agency, Inc. ("JMG-MA") (collectively "Defendants") in civil contempt of the Court's Preliminary Injunction Order expressly prohibiting Defendants "from transferring, dissipating, liquidating, or otherwise disposing of any personal or business assets without the leave of the Court," aside from "necessary medical costs not covered by health insurance" and ordinary business expenditures. *See* Prelim. Inj. Order (the "PI Order") at 2, ECF No. 19-1. In a startling disregard of the Court's PI Order, Mr. Grossman elected to use his business account as a personal "piggy bank" to pay a diverse array of non-business, non-medical expenses, including: (i) ███████████; (ii)██████; (iii) ███ ██████████████████████, and (iv) various payments into a trust account held by his wife, Nancy D. Grundman. Mr. Grossman's blatant, routine violations of the PI Order warrant severe sanctions, including entering judgment in favor of PSS on its claims against Defendants.

The gravamen of this case is Mr. Grossman's strategic misuse of the corporate form to evade PSS's attempts over the course of many years to collect judgments it has obtained against entities exclusively controlled by Mr. Grossman, including by making fraudulent transfers. Where this Court has already found in entering the PI Order, PSS has a substantial likelihood of demonstrating that "Grossman has used the corporate form to evade plaintiff's attempt to collect on two arbitration awards in Finland which plaintiff domesticated by obtaining judgments in its favor in the United States District Court for the Southern District of New York." PI Order at 3. Indeed, the Court found: "Grossman was the sole member" of the entities against which the judgments were entered. *Id.* At bottom, the Court held that "[t]here is evidence sufficient to satisfy this Court that Grossman has systematically misused the corporate form to thwart collection of the judgments awarded to plaintiff." *Id.* at 4.

1

Poetically, however, Mr. Grossman's repeated contravention of the PI Order only further solidifies that he uses his controlled entities as extensions of himself. He has so little regard for the PI Order that he has persisted in siphoning funds from the very business account against which PSS seeks to collect on its judgments towards his own personal uses. In so doing, Mr. Grossman has (again) diverted funds to seek to prevent PSS from collecting on its judgments. This time, he has done so despite the PI Order prohibiting exactly that, by spending almost ███████ ██████ over the span of ten months on non-business, non-health related expenses.

Mr. Grossman's pattern of defiance and inexcusable disregard for the Court's authority must be met with the harshest consequences available to the Court which are tangible enough to compel compliance moving forward and remedy prior non-compliance. For this reason, and in order to prevent further dissipation or diversion of funds, PSS respectfully requests that the Court find Defendants in civil contempt, enter judgment in favor of PSS, and order (1) reimbursement of reasonable attorneys' costs and fees  and (2) the appointment of a receivership, or in the alternative, that commissions due and owing to JMG-MA and Mr. Grossman be held in escrow during the pendency of this matter.

Additionally, Plaintiff seeks a finding of civil contempt against Mrs. Grundman because she is acting in concert with Mr. Grossman to shield assets from collection, as the recipient and beneficiary of countless transfers in violation of the PI Order. Indeed, as demonstrated below, JMG-MA has made several transfers to ██████████████████████ ██████████████████████████████, and JMG-MA has paid several of Mrs. Grundman's personal expenses, such as ████████████████████ ████████. Where Mrs. Grundman is not listed among the "Team" members on Puck Agency LLC's ("Puck") website (nor in financial disclosures), such expenditures can only be regarded as

2

personal in nature and in violation of the Court's PI Order.[1]

PSS respectfully submits that in the interests of judicial economy and particularly where Judge Gorton entered the PI Order, this Motion should not be referred to a magistrate judge.

## ii. Factual and Procedural Background

### I.    Factual Background

In 2012, PSS, a Finnish sports talent agency, contracted with Puck, a now-defunct business entity of which Mr. Grossman was the sole member and shareholder, to recruit and place Finnish hockey players in professional teams in the United States. *See* First Am. Compl. ¶¶ 2, 3, 11.[2] Under this agreement, the parties agreed to share in the revenue derived from the representation of Finnish professional ice-hockey players playing in the United States. ¶ 11. After Puck failed to make multiple payments due under the agreement, PSS succeeded in obtaining an arbitration award against Puck for $248,535.00, plus costs. ¶¶ 12, 14. PSS then domesticated the arbitration award and obtained a judgment against Puck for $323,327.00 in the SDNY. ¶ 17. After being unable to collect the judgment from Puck, PSS learned that Puck was no longer in business and that Mr. Grossman had incorporated JMG Sports Agency, Inc. ("JMG-NY") in the state of New York, not only to conduct the same business but in fact legally doing business as Puck. ¶¶ 18, 21-23. Mr. Grossman concealed this fact from PSS. ¶ 22. As it turns out, Mr. Grossman had transferred assets from Puck to JMG-NY and Puck had been defunct for years, a fact Mr. Grossman also concealed. ¶¶ 18-19, 21. PSS then proceeded to a second arbitration, naming Puck and JMG-NY as parties (because those were the only entities of which PSS was aware) in 2022. ¶ 26. Neither Puck nor JMG-NY appeared at this arbitration, and neither provided any reason for their absence. ¶ 27. In

---

[1] See https://puckagency.com/our-team/.

[2] All ¶ references are to the First Amended Complaint.

2024, PSS was able to successfully domesticate the second arbitration and obtain a United States judgment in SDNY jointly and severally against both parties for a total of $887,187.55. ⁋ 32. Neither Puck nor JMG-NY appeared to protest the award. ⁋ 34.

At the time the second arbitration was proceeding, Mr. Grossman continued to abuse the corporate form by creating yet another entity with the same name in Massachusetts, JMG Sports Agency, Inc. ("JMG-MA"). ⁋⁋ 30-31, 36. He did so three months after judgment was entered against JMG-NY. *Id.* Notably, PSS sought asset discovery relating to any legal or financial relationship between JMG-NY and JMG-MA pursuant to Federal Rules of Civil Procedure 34 and 69 in SDNY. ⁋ 36. However, neither JMG-NY nor Puck ever responded, despite their status as judgment debtors. ⁋ 37. Finally, Mr. Grossman was the only member of Puck and is the only stockholder of both JMG-NY and JMG-MA. *See* PI Order at 3.

## II.    Procedural Background

On September 12, 2024, PSS filed its Complaint against Defendants alleging the fraudulent transfer of assets under Massachusetts General Laws Chapter 109A, common law fraud (which has now been dismissed without prejudice), violations of Massachusetts General Laws Chapter 93A (which has now been dismissed with prejudice), and seeking a declaratory judgment to pierce JMG-MA's corporate veil. *See* Compl., ECF No. 1. Due to Mr. Grossman's systemic use of fraud to evade collection, PSS simultaneously filed a motion for a preliminary injunction against both Defendants which sought to enjoin the dissipation of their assets. *See* PSS's Mot. for Prelim. Inj., ECF No. 2. Based upon the pleadings, affidavits, and arguments of counsel at a hearing, the Court granted PSS's Motion for Preliminary Injunction. *See* PI Order. On October 15, 2024, the Court issued a blistering Memorandum of Order, holding that PSS had demonstrated a substantial likelihood of success on the merits based upon the following among other things:

a. Mr. Grossman has used the corporate form to evade Plaintiff's attempt to collect two arbitration awards that have been domesticated in US courts.

b. Mr. Grossman was the sole member of Puck and JMG-NY, the two entities against which judgment was entered.

c. After Puck contracted with Plaintiff in 2012, Mr. Grossman incorporated two successor entities and transferred Puck's assets without informing Plaintiff.

d. Plaintiff was only made aware of JMG-NY's existence after obtaining the first arbitration award.

e. At all times up to the present, Mr. Grossman has described his business to the public as 'Puck Agency.' Mr. Grossman has had complete and full control of each of the entities under which he has conducted his sports agency business.

f. There is evidence sufficient to satisfy this Court that Mr. Grossman has systemically misused the corporate form to thwart collection of the judgments awarded to Plaintiff.

g. The amount PSS is owed by the entities controlled by Mr. Grossman exceeds $1,000,000.

*See id.* at 3-5.

One week after the Court issued the PI Order, Mr. Grossman and Mrs. Grundman took affirmative steps to protect their largest and only real estate asset, *see* Ex. A ¶ 9, their home located in Martha's Vineyard at 36 Hammett Lane, Chilmark, MA, from execution by signing and filing a declaration of homestead on that property, *see* Ex. B. The timing of the declaration serves as strong circumstantial evidence of fraud, given that they had owned the marital home since 2003, *see* Ex. A ¶ 9, and only on the heels of the injunction order, did they file the declaration.

Discovery has since been ongoing. On December 2, 2024, Defendants produced Mr. Grossman's Affidavit Regarding Assets and Liabilities of JMG-MA, *see* Ex. C, stating that:



1. JMG-MA's only asset is its business account (ending in ███), which at that time had a balance of ██████. *Id.* at ¶ 1(a)(i).

2. JMG-MA employed one administrative assistant on a monthly basis, as an independent contractor. *Id.* at ¶ 7.

3. JMG-MA expected to invoice commissions totaling ████████████████ ████. *Id.* at ¶ 12.

4. JMG-MA owed ████████████████████████. *Id.* at ¶¶ 11-12.

In Mr. Grossman's December 2, 2024 Affidavit regarding his own personal assets and liabilities, *see* Ex. A, he states:

1. He is receiving, as of at least the date of the affidavit, ████████████████ ████████████████████████████. *Id.* at ¶¶ 12-13.

2. He owns the property located at 36 Hammett Lane, in Chilmark, MA jointly with his wife, Nancy Grundman. They purchased this property for ████████████ ████████████████████. *Id.* at ¶¶ 9, 23.

3. He holds ████████████████████████████████████ ████████████████████. *Id.* at ¶ 20.

Defendants have produced bank statements for JMG-MA's business account (ending in ███), for Mr. Grossman's personal checking and savings accounts (ending in ███ and ███), and a for joint checking account in Mr. Grossman's and Mrs. Grundman's name (ending in ███) demonstrating various deposits which post-date the Court's PI Order and that PSS believes resulted from, *inter alia*, Defendants' December 2024 commissions invoicing. *See* Exs. D, E, F, G, H, I. These statements detail **<u>numerous</u>** unauthorized transfers and expenditures, such as:[3]

---

[3] For ease of reference, PSS attaches a spreadsheet outlining deposits to JMG-MA checking

1. A ███ payment evidently represents ████████████████████ ████████████████████████████████████ ████████████████████. *See* Ex. A ¶ 8(f); Ex. I at Row 3; Ex. D at JMG005053; Ex. J at JMG003740; Ex. K at JMG005035.

2. $3,790 in payments for yoga. *See* Ex. I at Rows 153-156.

3. ████ in payments to ██████████. *See* Ex. I at Rows 1-2.

4. ██████████████ payments, ████████████████████ ██████████████████████. *See* Ex. A at ¶ 9; Ex. I at Row 82. The remainder of these payments were made to ████████████████ ██████████████████████████████.[4] *See* Ex. I at Rows 15-81.

5. A ████ payment to ████████████████████████████. *See* Ex. I at Row 111.

6. ████████████████████ payments. *See* Ex. I at Rows 91-93.

7. ████████████████ payments for Mrs. Grundman, who is not an employee of JMG-MA per Mr. Grossman's 2022, 2023, 2024, and 2025 Statements of Financial Interests, which he filed every year after being elected to the Martha Vineyard's Commission. *See* Ex. L at ¶ 7; Ex. I at Rows 83-88.

8. ██████████████████████ payments. *See* Ex. I at Rows 92-96.

---

account ending in ███, *see* Ex. H, and a spreadsheet outlining withdrawals from three key bank accounts: JMG-MA checking ending in ████, Grossman checking ending in ████, and Grossman savings ending in ████. *See* Ex. I.

[4] As explained herein, it defies credulity that a non-operating company, whose sole shareholder and employee is disabled, would have incurred over $80,000 in legitimate business expenses in a nine-month period.

9. ████ in payments for ████████. *See id.* at Rows 109-110.

10. ████████████ payments. *See id.* at Row 97.

11. ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████. *See* Ex. I at Rows 141-149; Ex. M at JMG004710.

12. An ████ contribution to ████████████. *See* Ex. I at Row 98.

13. An ████ contribution to ████████████. *See id.* at Row 99.

14. ████████████████. *See id.* at Rows 101-108.

15. ████ in payments for ████████████. *See id.* at Rows 92-96.

16. ████ in ██ payments to ██████.[5] *See id.* at Rows 4-14.

17. A ████ payment for ████. *See id.* at Row 100.

18. A ████ payment to ████████, an unknown third-party. *See id.* at Row 140.

19. ████ in unspecified withdrawals from Mr. Grossman's savings account ending ██. *See id.* at Rows 150-152.

20. ████████ in check payments made to unknown recipients. *See* Ex. I *id.* at Rows 114-139.

Further, JMG-MA's bank statements reflect several recent transfers made from a checking account belonging to JMG-NY, the New York entity. The ████████████ checking account of JMG-NY ending in ████ is the primary operational account of JMG-NY for deposits

---

[5] Mr. Grossman owns ████████████████████████████████████ ████████████████████████████████████. *See* Ex. A at ¶ 8; Ex. C at ¶ 9. Therefore, upon information and belief, the ████████████████████ ████████████████ by Mr. Grossman nor JMG-MA.

and payments and long predates the formation of JMG-MA in 2022. *See* Ex. M; Ex. N ¶ 33.  In

███████████, Defendants transferred at least ███████ to JMG-MA from JMG—the New York

entity against which PSS obtained the judgment which forms the basis of the instant matter. *See*

Ex. N at ¶ 32; Ex. H at Rows 9-11. Defendants made those transfers despite the fact that Mr.

Grossman has sworn under penalty of perjury that JMG-NY ceased operating in 2022, three years

prior to the transfers. *See* Ex. N at ¶¶ 32-34.[6]

Relatedly, Mr. Grossman has been receiving ██████████████████████████

███████, *See* Ex. A at ¶¶ 12-13; Ex. G at JMG005282. He has informed the Court and PSS that he

is suffering from Stage IV lung cancer, and is currently undergoing extensive chemo and radiation

therapy. *See* Jay Grossman Decl. at 10, ECF No. 15 (stating, "I need access to my personal assets

to provide for my cancer treatment and care"). Mr. Grossman adjourned his deposition, which was

originally set for September 30, 2025, due to health concerns and recently advised counsel that he

will not sit for a deposition in 2025 due to the side effects of his treatment. *See* Pl.'s Mot. to Compel

Dep. of Def. Grossman, Ex. A, ECF No. 92.

### iii. Argument

### I.    Defendants' Violation of the PI Order is a Civil Contempt of this Court.

The Court has inherent power to hold parties in contempt. *AngioDynamics, Inc. v. Biolitec*

*AG*, 946 F. Supp. 2d 205, 212 (D. Mass. 2013), *aff'd and remanded in part*, 780 F.3d 420 (1st Cir.

2015). Civil contempt may be imposed to either compel compliance with a court order or to

compensate a party harmed by another's non-compliance. *McComb v. Jacksonville Paper Co.*, 336

U.S. 187, 191 (1949).

---

[6] JMG-MA appears to also have ████████████████████████████████████████████
████████████████████████████████. *See* Ex. I at Rows 112-113.

To prove civil contempt, a movant must show with clear and convincing evidence that, "(1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order." *AngioDynamics*, 946 F. Supp. 2d at 212 (quoting *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)). Each of these prongs are satisfied here.

A party's objectionable conduct need not be willful for the party to be found in contempt. Rather, sanctions for civil contempt can be imposed without a finding of willfulness. *McComb*, 336 U.S. at 191 ("The absence of willfulness does not relieve from civil contempt."); *see also Star Fin. Servs., Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 13 (1st Cir. 1996). Indeed, "good faith is not a defense to civil contempt." *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982). Thus, the only issue for the Court to decide here is whether Defendants have failed to comply with the PI Order. The evidence unequivocally demonstrates that Defendants have not complied and, instead, have continued their prior efforts to evade collection of monies duly owed to PSS.

First, there can be no dispute that Defendants had notice of the PI Order. *See* Clerk's Notes for Proceedings before Judge Gorton, ECF No. 18.

With respect to the second prong, "the order must 'be specific about what is to be done or avoided' and 'who was expected to behave in the indicated fashion.'" *Dystar Corp. v. Canto*, 1 F. Supp. 2d 48, 54 (D. Mass. 1997) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991)). Toward this end, "the contemnor must be able to 'ascertain from the four corners of the order precisely what acts are forbidden.'" *Id.* (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Here, the Court's Order specifically provides that Defendants are:

> **RESTRAINED**  and **ENJOINED** from transferring, dissipating, liquidating, or
> otherwise disposing of any personal or business assets without the leave of the

Court, provided, however, that 1) Grossman may pay all necessary medical costs not covered by health insurance and 2) JGM-MA may conduct business in the ordinary course subject to periodic, reasonable audits of such expenditures by an accountant chosen by plaintiff's counsel.

PI Order at 2 (emphasis in original). This language is patently clear so as to place Defendants on notice that they are free to make expenditures **only** with respect to "medical costs not covered by health insurance" and to "conduct business in the ordinary course." *Id.* Any other expenditures, such as those for yoga, personal phone lines, antique cars, and pest control, are therefore strictly prohibited "without the leave of the Court." *Id.* The PI Order unquestionably demands that Defendants preserve all other assets until further order of this Court. Moreover, the clarity of the PI Order is confirmed by Defendants failure to challenge the Court's clear and unambiguous language restraining them from "from transferring, dissipating, liquidating, or otherwise disposing of any personal or business assets" other than those related to "medical costs not covered by health insurance" and to "conduct business in the ordinary course." *Id.*

Nonetheless, Defendants have repeatedly caused the transfer, dissipation, and disposition of both personal and business assets in contravention of the Court's instructions. As referenced above, Defendants have produced bank statements that post-date the PI Order for accounts held by Defendants through August 31, 2025. *See* Exs. D, E, F, G, I. These statements reflect ███████ ███████████████ expenditures that have no apparent relation to "medical costs not covered by health insurance" or to conducting "business in the ordinary course." PI Order at 2.

Despite the PI Order's express language limiting Defendants to expenditures, Mr. Grossman deposited approximately ████████ into JMG-MA's business checking account between October 15, 2024 and on August 31, 2025, but the balance at the end of that ten-month period was ██████. *See* Ex. H; Ex. D at JMG005077.

The transactions enumerated above also demonstrate that Mr. Grossman is using JMG-

MA's business account (instead of his personal income) to fund personal expenses, which span the spectrum of frivolous (████████████████████ to essential (██████). Defendants cannot seriously argue that these, or any of the other expenditures, were business-related. Given that Mr. Grossman has ██████████████████████████████, *see* Ex. G at JMG005282, and is the sole shareholder and employee of JMG-MA, this entity is not conducting business that could warrant ████████████ expenditures. Indeed, Mr. Grossman himself has represented to PSS that he is not healthy enough to take part in a deposition during this "calendar year." *See* Pl.'s Mot. to Compel, Ex. A, ECF No. 92.

Further, it is evident that Mr. Grossman is **<u>purposefully</u>** saving funds in the savings account held only in his name at ████████████. *See* Ex. G. Mr. Grossman's payments of ██████ ████████████████████ are deposited into that savings account, and while he uses both accounts held at ████████████ to pay a few limited personal expenses, in the period at issue, the balance of that savings account has risen from ██████ on October 15, 2024 to ██████ on August 31, 2025. *See* Ex. G at JMG005280, 5300. Clearly, Mr. Grossman is living off the commissions earned by JMG-MA in an effort to ████████████████ likely because he hopes PSS's alter ego claim fails as to him personally even if it succeeds as to JMG-MA. This is also likely why of the ████████████████████, only ██████ was paid to the one company that ████████████████████. *See* Ex. A ¶ 20; Ex. I at Rows 15-82. Mr. Grossman, who claims to be disabled, is purposefully using the company credit cards, as opposed to the one card in his name, to pay his personal expenses so as to then attempt to justify using JMG-MA's business account to pay those bills. While Defendants are not yet in receipt of statements outlining these credit card expenses (because Defendants have refused

to produce them despite an on-point request for production),[7] it is implausible that a non-operating company incurred over ███████ in legitimate business expenses that were paid by credit card. Of course, if Defendants intend to rebut this contention by arguing that the business legitimately racked up $80,000 in expenses during the relevant time period, then Defendants should produce the credit card statements at issue, which are responsive to PSS's Request for Production No. 7.

Therefore, the record is replete with evidence of Defendants' blatant and repeated violation of the PI Order, satisfying the third prong of the test for civil contempt.

As to the final prong, Defendants had the ability to comply with the PI Order by simply utilizing JMG-MA's business account and his personal accounts to pay "medical costs not covered by health insurance" and to "conduct business in the ordinary course." PI Order at 2. If Defendants have had confusion regarding what they can and cannot dissipate in light of the PI Order, the language of the order expressly contemplates their ability to move for leave of Court. *See id.* Instead, Defendants have dissipated nearly every penny JMG-MA earned in the ten-month period at issue without leave. For these reasons, PSS asks that the Court hold Defendants in contempt of the Court's PI Order.

## II.    The Court Should Impose Sanctions in the Form of Judgment and Reimbursement of Attorneys' Costs and Fees.

The Court's "authority to assess a sanction for contempt" derives from "its inherent power." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002) (citations omitted). Courts

---

[7] Indeed, Request for Production No. 7 seeks: "All documents evidencing Mr. Grossman, Puck, JMG-NY, and/or JMG-MA's depository accounts, checking accounts, savings accounts, lines of credit or any similar accounts at any bank, credit union, or other depository institution or investment institution identifying the institution, the name and address of the branch at which the account was opened, the name and address of the branch at which the account is maintained, and all account and subaccount numbers, as well as the balance as of the date of response." *See* Ex. R at ¶ 17.

have wide discretion to craft civil contempt sanctions to coerce compliance with the court's order or compensate a movant for losses sustained from the violation of the court order. *AngioDynamics*, 946 F. Supp. 2d at 214; *see also Hawkins*, 665 F.3d at 32 n.10 ("Judicial sanctions in civil contempt proceedings may . . . be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.") (quoting *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)).

The First Circuit has identified a "non-exhaustive list of factors" for Courts to consider when imposing sanctions, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics, Inc. v. Biolitec AG,* 780 F.3d 429, 435 (1st Cir. 2015) (citing *Vallejo v. Santini-Padilla*, 607 F.3d 1, 8 (1st Cir. 2010)).

Here, Defendant's well-documented unscrupulous conduct is simply an extension of their prior efforts to use any means necessary to evade PSS's collection efforts. The deliberateness of Defendants' conduct cannot seriously be disputed, and the prejudice to PSS is evident—in just a ten-month period, Defendants have squandered nearly half a million dollars of assets (that theoretically could have been used to satisfy a judgment in PSS's favor) which this Court ordered preserved pending this litigation.

Sanctions for failure to obey a Court Order may include the imposition of "default judgment against [a] disobedient party." *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 84 (1st Cir. 2012) (citations omitted); *see also Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 507 (D. Mass. 2022) (holding that repeated violations of court orders despite stern warnings constitute "extreme misconduct" justifying default judgment). "While

14

default judgment is considered a 'drastic sanction,' its entry 'provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice.'" *Companion*, 675 F.3d at 84 (quoting *Crispin-Taveras v. Mun. of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011)).

Here, both coercive and compensatory measures, including default judgment, are just and necessary given that Defendants have repeatedly demonstrated their willingness to do whatever it takes to evade PSS's collection efforts such that the likelihood that Defendants will continue to do so is essentially guaranteed. Indeed, this is evident in the transactions enumerated above, some of which demonstrate Defendants' shuffling monies from one corporate entity to another, only to then simply return it again, thereby purposefully creating what they hope is an untraceable web of transfers. *See* Ex. H at Rows 9-11; Ex. I at Rows 112-113. It is further evident in the fraudulent transfers made to Mrs. Grundman's account ending in ███████████████████████, *see* Ex. I at Rows 141-149; Ex. M at JMG004710, and numerous withdrawals for personal expenditures in direct violation of the PI Order.

Accordingly, the Court should enter judgment and order Defendants to reimburse PSS for all costs and attorneys' fees associated with the instant motion.

### III. The Court Should Also Appoint a Receivership, or in the Alternative, Order Future Commissions to be Held in Trust.

Under the Massachusetts General Laws Chapter 109A, the Uniform Fraudulent Transfer Act ("UFTA"), this Court has broad discretion to remedy attempts by debtors to evade creditors by improperly transferring assets, which attempts amount to fraudulent transfers. Among other things, this court has the power to: (i) issue an injunction against a transferee to prevent the further disposition of property; (ii) appoint a receiver to take charge of the transferee's property; or (iii) grant "any other relief the circumstances may require." G.L. c. 109A, § 8(a)(3)(i)-(iii).

15

In appointing a receiver, courts consider:

Fraudulent conduct on the part of the defendant; imminent danger that property would be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Wells Fargo Bank, N.A. v. Walnut Equity Partners, LLC*, No. 10-10287, 2010 WL 1065004, at *3 (D. Mass. 2010) (quoting *Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982)). Further, courts consider two other relevant factors: "the probability that appointment of a receiver will protect the interests of the party seeking appointment and the nature of the receiver's duties." *Chase Manhattan Bank*, 683 F.2d at 27.

This Court has previously found that Defendants used the corporate form to evade PSS's judgment and that PSS has a "substantial likelihood of success on the merits" of its claims. *See* PI Order at 3-5. PSS has further presented evidence of Defendants' blatant disregard for the Court's authority and its Preliminary Injunction. Defendants' dissipation of nearly ████████ ████ of assets in the ten-month period following the Court's PI Order demonstrates both the great likelihood of harm PSS will suffer if a receiver is not appointed, as well as the necessity for a receiver to be appointed to protect the PSS's interests. Indeed, Defendants' pattern of conduct makes plain their intent to frustrate collection and place assets beyond reach. Their deliberate evasion is guaranteed to continue unless the Court appoints a receiver.

PSS thus respectfully requests that the Court order an appointment of a receiver to: (1) manage, operate, and control JMG-MA; (2) oversee Mr. Grossman's income and expenditures; and (3) conduct any other functions necessary to protect Plaintiff's interests, including:

    a.   Identify, locate, and take possession of all assets Defendants own or control;

    b.   Prevent any transfer, concealment, dissipation or encumbrance of all assets Defendants

own or control;

c.  Conduct a forensic accounting of all funds Defendants transferred, withdrawn, or dissipated since the date of the PI Order;

d.  Trace Defendants' assets and funds to determine whether they have been fraudulently transferred to third parties, family members, or affiliated entities;

e.  Subpoena financial institutions and third parties as necessary to obtain complete financial records and information;

f.  Operate, manage, or suspend operations of JMG-MA as the receiver deems necessary to preserve asset value;

g.  Approve or disapprove all expenditures by Defendants;

h.  Collect JMG-MA accounts receivable and income derived from ongoing business activity; and

i.  File an initial inventory and report within 30 days of appointment, detailing all assets, liabilities, and financial accounts discovered.

In the alternative, since Defendants are, on information and belief, owed future commissions from ongoing contracts with athletes, *see* Ex. C at ¶ 12; Ex. O, PSS requests that the Court order that these commissions be made payable to an escrow account held by Plaintiff's counsel at TD Bank and that these monies shall be held in trust pending the resolution of this action.[8] While these commission proceeds have customarily been transferred to JMG-MA's Bank of America accounts, given Mr. Grossman's propensity to divert funds in order to avoid PSS's collection efforts, this relief is particularly appropriate if the Court does not appoint a receivership.

---

[8] Plaintiff's counsel opened this escrow account in anticipation depositing monies due Defendants as a result of the 2025 NHL entry draft.

IV.    **The Court Should Also Find Mrs. Grundman in Civil Contempt and Order the Return of all Monies Fraudulently Transferred to Her.**

The Court should also find Mrs. Grundman in contempt due to her acting in concert with, aiding and abetting, and conspiring with Defendants to unlawfully shield and dissipate assets which could be used to satisfy a judgment in favor of PSS. Ordinarily, an injunction is binding only on the parties named in the order. *Dystar Corp.*, 1 F. Supp. 2d at 56. However, Rule 65(d) provides that, "[e]very order granting an injunction and every restraining order . . . is binding . . . upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). "Courts generally interpret 'the language 'active concert or participation with' as requiring that a person either be legally identified with a party in the case or aid and abet the party to violate the decree.'" *Dystar Corp.*, 1 F. Supp. 2d at 56 (quoting *Project B.A.S.I.C.*, 947 F.2d at 20). To prove a nonparty aided and abetted the violation of an injunction, a party can provide evidence that "the nonparty participated in the contumacious act." *Id.* (quoting *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir. 1980)). As articulated further below, Mrs. Grundman was not only the recipient of transfers out of the JMG-MA's account in violation of the PI Order, but she acted in concert with her husband after the PI Order issued to place a homestead on their property.

With respect to the notice requirement, the suspicious timing of the filing of the homestead exemption is dispositive. Despite having owned the home for over two decades, Mrs. Grundman signed and filed the homestead exemption within a week of the Court's PI Order. *See* Ex. B. Mr. Grossman was obviously aware of the debt and, as his spouse, Mrs. Grundman was also well aware of the debt here. As a sophisticated couple with juris doctorate degrees from Benjamin Cardozo School of Law (Mr. Grossman), and Fordham School of Law (Mrs. Grundman), they fraudulently utilized the homestead exemption following the PI Order as a tool for shielding a portion of the

asset from PSS's collection of Mr. Grossman and his entities' debts. *See* Ex. P; Ex. S.

Furthermore, as demonstrated above, JMG-MA's business account was used to pay for Mrs. Grundman's personal expenses, such as ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ However, the PI Order expressly mandated Defendants to change their prior behavior to prevent the dissipation of assets from JMG-MA's business account; the fact that the account continued making such expenditures evidences Defendants made no meaningful changes. Mrs. Grundman was obviously well aware that she was not personally funding these expenditures from her personal accounts, but nonetheless accepted these payments and transfers. Under UFTA, PSS maintains a viable claim against Mrs. Grundman as both a "first transferee" of fraudulently transferred assets and/or a "subsequent transferee" who accepted fraudulently transferred assets in bad faith. *See* G.L. c. 109, § 9. By assisting her husband in preserving assets by way of filing the homestead exemption and receiving diverted business assets towards her personal expenses (while frustrating enforcement of PSS's judgment), Mrs. Grundman acted "in active concert or participation" with Defendants. *See* Fed. R. Civ. P. 65(d). Thus, she is properly subject to the Court's equitable powers under Rule 65(d).[9]

Accordingly, the Court should find Mrs. Grundman in contempt of the PI Order and order her to return all payments and transfers made from October 15, 2024 to date from JMG-MA's business account to ████████████████████████████████████████████████ ███████████████████████████████████████████████████.[10]

---

[9] Plaintiff will be filing a motion to amend and add Mrs. Grundman as a defendant in short order.

[10] Plaintiff has subpoenaed copies of all checks written from JMG-MA's business account. Should any of these checks reflect fraudulent transfers made to Mrs. Grundman, the Court should order the return of those funds as well.

### iv. Conclusion

For all the reasons set forth above, this Court should hold Defendants and Mrs. Grundman in contempt, enter judgment against Defendants, and order the following: (1) reimbursement of reasonable attorneys' costs and fees, and (2) the appointment of a receivership, or in the alternative, that commissions due and owing to JMG-MA and Mr. Grossman be held in escrow during the pendency of this matter. The Court should also order Mrs. Grundman to return all payments and transfers made from October 15, 2024 to date from JMG-MA's business account to ███████, and further relief as the Court finds appropriate.

Respectfully submitted,
PROFESSIONAL SPORT SERVICE FI OY
By its attorneys,

*/s/ Gregory R. Browne*
Benjamin J. Wish (BBO No. 672743)
bwish@toddweld.com
Gregory R. Browne (BBO No. 708988)
gbrowne@toddweld.com
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Joseph J. DePalma (NJ Bar No. 002151982)
*Pro Hac Vice Admittance Pending*
jdepalma@litedepalma.com
**LITE DEPALMA GREENBERG &
AFANADOR, LLC**
570 Broad St, Suite 1201
Newark, NJ 07102
(973) 623-3000

Dated: November 25, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory R. Browne, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Gregory R. Browne*_____
Gregory R. Browne

Dated: November 25, 2025